**Carrell G. DUNN, Administrator of The Estate of James Carrell Dunn, Deceased, and Brandon James Fisher-Dunn, A Minor, by and through his Grandfather, Next Friend and Administrator, Carrell G. Dunn, Plaintiffs,**

v.

**PADUCAH INTERNATIONAL RACEWAY, A Corporation, Partnership, or Sole Proprietorship, Charles Harrison d/b/a Paducah International Raceway, National Dirt Racing Association (NDRA), John Doe (A person or business or businesses which provided water trucks and water supplies for dust control and safety at the Paducah Raceway), and John Doe (A person or business or businesses which provided fire extinguishers or fire prevention and control services to the Paducah Raceway), Defendants.**

Civ. A. No. 84–0166–P.

United States District Court,
W.D. Kentucky.

Nov. 19, 1984.

Clay P. Graham, Stephen R. McCann and James W. Robertson of Graham & McClelland, Zanesville, Ohio, and Bryce Franklin of Williams, Housman, Sparks & Franklin, Paducah, Ky., for plaintiffs.

Michael P. Penick of Boehl, Stopher, Graves & Deindoerfer, Paducah, Ky., for defendants.

MEMORANDUM OPINION

JOHNSTONE, District Judge.

This action arises out of an accident on May 8, 1983, at the Paducah International Raceway in Paducah, Kentucky. The accident involved an automobile collision during one of the races at the Raceway and resulted in the death of James Carrell Dunn, one of the participants in the racing event. Dunn's administrator seeks to re-

cover for Dunn's injuries and death. Jurisdiction exists under 28 U.S.C. § 1332, based upon diversity of citizenship and an amount in controversy in excess of $10,000.[1] The matter is presently before the court on a motion for summary judgment filed on behalf of the Paducah International Raceway, Charles Harrison d/b/a Paducah International Raceway, and the National Dirt Racing Association.

The defendant's motion for summary judgment does not turn upon the factual circumstances surrounding Dunn's death. Instead, the motion focuses on one narrow and crucial issue: Whether a recovery against the defendants is barred by a release executed by Dunn prior to his entry in the fateful race. By signing the agreement, Dunn promised to release the defendants

> from all liability to [Dunn], his personal representatives, assigns, heirs, and next of kin for any and all loss or damage, and any claim or demands therefore on account of injury to the person or property or resulting in death of [Dunn], whether caused by the negligence of the [defendants] or otherwise while the undersigned is in or upon the restricted area, and/or competing, officiating in, observing, working for, or for any purpose participating in the event.

Dunn also promised to assume "full responsibility for and risk of bodily injury, death or property damage due to the negligence" of the defendants. The defendants contend that the release conclusively bars a recovery. The plaintiffs respond by arguing that the release is against public policy and, therefore, void.

As a general rule, agreements which attempt to release a person from the consequences of his own negligence are invalid. *See Meiman v. Rehabilitation Center, Inc.*, 444 S.W.2d 78 (Ky.1969). The general rule has *not* been applied, however, in situations involving release agreements signed by participants in racing events. *See, e.g., Gore v. Tri-County Raceway, Inc.*, 407 F.Supp. 489 (M.D.Ala.1974); *Tope v. Waterford Hills Road Racing Corporation*, 81 Mich.App. 591, 265 N.W.2d 761 (1978); *Seymour v. New Bremen Speedway, Inc.*, 31 Ohio App.2d 141, 287 N.E.2d 111 (1971); *Solodar v. Watkins Glen Grand Prix Corp.*, 36 A.D.2d 552, 317 N.Y. S.2d 228 (N.Y.Supp.Div.1971). There are several reasons for this exception. First, the release is truely voluntary, *i.e.*, a racer is free to refuse to participate under the conditions imposed. *Solodar*, 317 N.Y.S.2d at 229. Thus, it is unlike the situation where a particular need or an unequal relationship between the parties to the agreement compels or encourages participation under unfavorable conditions. *Cf. Meiman*, 444 S.W.2d at 78 (involving a release agreement between a medical center and a patient requiring treatment). Moreover, the racing situation involves purely private interests and does not involve special relationships in which the public as a whole is deemed to have an interest. *See Morrow v. Auto Championship Racing Association, Inc.*, 8 Ill.App.3d 682, 291 N.E.2d 30 (1972); *Frence v. Special Services, Inc.*, 107 Ohio App. 435, 159 N.E.2d 785, 788 (1958). Finally, excepting racing and similar sporting competitions from the general rule against exculpatory agreements *promotes* the public's interest in observing and following sporting competitions, provided that the release is truely voluntary, since without a release it is doubtful that anyone would be willing to sponsor such events. *Gore*, 407 F.Supp. at 492; *Tope*, 265 N.W.2d at 764.

---

**1.** The court is aware of the inclusion of two John Doe defendants in the plaintiffs' complaint; however, it concludes that the John Does do not destroy diversity jurisdiction. The plaintiffs have at least stated that the John Does are citizens of states other than that of the plaintiffs, and there is no indication that the John Does were intended as a means of artificially obtaining jurisdiction in this court. The plaintiffs apparently proceeded in this manner with the hope of later amending the complaint to substitute the names of real defendants once the proper identities had been discovered; however, the naming of the John Does does not provide the plaintiffs with any amendment rights that they did not already possess. *See* Fed.R.Civ.P. 15. Accordingly, until an amendment adding additional defendants has been permitted by the court, the John Doe allegations are merely "surplusage," and do not affect diversity jurisdiction. *See Hannah v. Majors*, 35 F.R.D. 179, 180 (W.D.Mo.1964).

■ Although there are no Kentucky cases dealing with a release agreement in a racing event or similar situation, the cases cited above provide overwhelming authority for finding that such agreements do not violate public policy and, therefore, are valid and enforceable. Indeed, the court has not been provided with a single case which has reached a contrary conclusion. Based upon the reasoning contained in the cases which have discussed the matter, the court finds that if the Kentucky courts were faced with the issue they would hold that the release agreement signed by Dunn is valid and enforceable. This conclusion is not altered by Kentucky's *general* rule against the validity of exculpatory agreements, since the situation involved in this case represents an exception to that rule. Accordingly, this court finds that the release agreement bars the plaintiffs from recovering against the Paducah International Raceway, Charles Harrison d/b/a Paducah International Raceway and the National Dirt Racing Association.

There being no genuine issues of material fact and the court having determined that the defendants named above are entitled to judgment as a matter of law, an order will be entered granting the defendants' motion for summary judgment.