689 F.Supp. 964 (1988)
Norman HAINES and Barbara Haines, Plaintiffs,
v.
ST. CHARLES SPEEDWAY, INC., Defendant.
Bob WENTE, Defendant/Third Party Plaintiff,
v.
Mike THURMAN, Third Party Defendant/Fourth Party Plaintiff,
v.
Joe DYSON and Bob Elders Cadillac, Inc., Fourth Party Defendants.
No. 87-0634C(6).
United States District Court, E.D. Missouri, E.D.
July 21, 1988.
*965 Eugene Farenkrog, St. Louis, Mo., for plaintiffs.
Terrance Good, Carolyn Kopsky, Lashly, Baer & Hamel, St. Louis, Mo., Charles Medley, Farmington, Mo., for defendant.

MEMORANDUM
GUNN, District Judge.
This matter is before the Court on defendants' separate motions to dismiss or in the alternative for summary judgment.
Plaintiffs Norman and Barbara Haines bring this action against defendant Bob Wente, the promoter of a racing event at the St. Charles Speedway, and defendant St. Charles Speedway, Inc., the owner and operator of the speedway. In Count I of their first amended complaint, Norman Haines seeks to recover for injuries he allegedly sustained at the speedway as a result of defendants' negligence when a push car pushed a sprint car into his left leg and foot. He alleges that defendants negligently permitted an inexperienced driver to operate the push car, negligently constructed and maintained the speedway, and negligently failed to warn him of the dangers the speedway presented. In Count II of their first amended complaint, Barbara Haines seeks to recover for the *966 loss of her husband's care, services, society and consortium allegedly sustained as a result of his injury. By way of defense, and asserted as grounds for relief in their motions for summary judgment, defendants contend that Norman Haines executed a "Release and Waiver of Liability and Indemnity Agreement" ("Release") immediately before his injury and that such Release exculpates them from any liability they may have incurred as a consequence of their alleged negligence. The parties agree that Missouri law controls.
Before considering defendants' respective motions for summary judgment, the Court notes that summary judgment is only available to the moving party if it demonstrates that there is "no genuine issue as to any material facts" and that it is "entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof is on the moving party. City of Mt. Pleasant, Iowa v. Assoc. Elec. Co-op., 838 F.2d 268, 273-74 (8th Cir.1988). Once the moving party discharges its burden, the non-moving party "must do more than show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Industrial Co. v. Zenith Radio, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, it then bears the burden of setting forth specific facts to show that "there is sufficient evidence favoring [it] for a jury to return a verdict for [it]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). If the non-moving party fails to meet that burden, summary judgment should be granted. City of Mt. Pleasant, 838 F.2d at 274.
Insofar as it is pertinent here the undisputed facts are as follows. On April 25, 1986, Norman Haines went to the St. Charles Speedway to participate in a racing event promoted by Bob Wente. He joined a line of persons who were entering the infield area of the speedway. As a condition precedent to entering the infield area, he was required to sign the Release, which provides in relevant part:
IN CONSIDERATION of being permitted to enter for any purpose any RESTRICTED AREA (herein defined as including but not limited to the racing surface, pit areas [and] infield ...) ... or for any purpose participate in any way in the event, EACH OF THE UNDERSIGNED ...
1. HEREBY RELEASES, WAIVES, DISCHARGES AND COVENANTS NOT TO SUE the promoter, participants, racing association, sanctioning organization ..., track operator, track owner, officials, car owners, drivers [and] pit crews ... from all liability to the undersigned ... for any or all loss or damage and any claims or demands therefor on account of injury to the person or property or resulting in death of the undersigned, whether caused by the negligence of the Releasees or otherwise while the undersigned is in or upon the restricted area ... or for any purpose participating in the event; ...
3. HEREBY ASSUMES FULL RESPONSIBILITY FOR ANY RISK OF BODILY INJURY, DEATH OR PROPERTY DAMAGE due to the negligence of Releasees or otherwise while in or upon the restricted area and/or while competing, officiating, observing, or working for or for any purpose participating in the event.
EACH OF THE UNDERSIGNED expressly acknowledges and agrees that the activities of the event are very dangerous and involve the risk of serious injury and/or death and/or property damage. EACH OF THE UNDERSIGNED further expressly agrees that the foregoing Release, Waiver and Indemnity Agreement is intended to be as broad and inclusive as is permitted by the law of the province or state in which the event is conducted and that if any portion thereof is held invalid, it is agreed that the balance shall, notwithstanding, continue in full legal force and effect.
THE UNDERSIGNED HAS READ AND VOLUNTARILY SIGNS THE RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT, and further agrees that no oral representations, statements or inducements apart *967 from the foregoing written agreement have been made.
Although Norman Haines has a reading capability roughly equivalent to a child in the second or third grade, he executed the Release. He did not take the time to fully read the Release and the operators of the speedway did not explain its terms to him. Indeed, he believes that if he had taken the time necessary to understand its terms he would have slowed the progress of the line and would thereby have engendered considerable hostility on the part of the other patrons who were waiting to enter the infield area.
After Norman Haines executed the Release and entered the infield area, he was struck by his own sprint car which was then being operated by one of his employees, Mike Thurman.[1] Although the facts leading up to the accident remain unclear, it is undisputed that the accident occurred when a push car, operated by Joe Dyson and owned by Bob Elders Cadillac, Inc.,[2] was engaged in push starting the sprint car.
In their motions for summary judgment, defendants contend that there is no genuine issue as to whether Norman Haines executed the Release and that under the applicable Missouri law the Release bars plaintiffs from proceeding against them in this action. Plaintiffs' response is threefold. First, they contend that the Release is void as a matter of law. Second, they contend that the circumstances surrounding its execution raise genuine issues as to its enforceability. Third, they contend that the accident giving rise to plaintiffs' injuries is outside the scope of the Release. As the Court finds plaintiffs' arguments to be without merit, it grants defendants' motions for summary judgment.
First, exculpatory clauses of the kind contained in the Release which exonerate parties from acts of future negligence are not against public policy in Missouri and are thus valid and binding on the parties. Rock Springs Realty, Inc. v. Waid, 392 S.W.2d 270, 272 (Mo.1965); Liberty Financial Management Corp. v. Beneficial Data Processing Corp., 670 S.W.2d 40, 47 (Mo.App.1984); Phillips v. Atlantic Richfield Co., 605 S.W.2d 139, 141 (Mo. App.1979). As the court of appeals explained more fully in Financial Management, "`[i]t is generally held that those who are not engaged in public service may properly bargain against liability for harm caused by their ordinary negligence in performance of contractual duties; but such an exemption is always invalid if it applies to harm wilfully inflicted or caused by gross or wanton negligence.'" Financial Management, 670 S.W.2d at 47-48 (quoting 6A Corbin on Contracts, § 1472 (1962)).
Although the Missouri courts have not been asked to enforce exculpatory agreements in the racing context, the jurisdictions who have uniformly upheld them. See, e.g., Hammer v. Road America, Inc., 614 F.Supp. 467 (D.C.Wis.1985) (applying Wisconsin law); Dunn v. Paducah International Raceway, 599 F.Supp. 612 (W.D. Ky.1984) (applying Kentucky law); Rhea v. Horn-Keen Corp., 582 F.Supp. 687 (W.D. Va.1984) (applying Virginia law); Grbac v. Reading Fair Co., 521 F.Supp. 1351 (W.D. Penn.1981) (applying Pennsylvania law); Gore and Gore v. Tri-County Raceway, Inc., 407 F.Supp. 489 (M.D.Ala.1974) (applying Alabama law); Schlessman v. Henson, 83 Ill.2d 82, 46 Ill.Dec. 139, 413 N.E.2d 1252 (1980); Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 209 N.E.2d 329 (1965); LaFrenz v. Lake County Fair Board, 172 Ind.App. 389, 360 N.E.2d 605 *968 (1977); Winterstein v. Wilcom, 16 Md.App. 130, 293 A.2d 821 (1972).
In so doing, the courts have generally reasoned (a) that the exculpatory agreement is truly voluntary, i.e., a racer is free to refuse to race under the conditions imposed; (b) that the racing situation involves purely private interests and does not involve special relationships in which the public as a whole is deemed to have an interest; and (c) that such exculpatory agreements promote the public interest in observing and following sporting competitions since without an agreement it is doubtful whether anyone would be willing to sponsor these events. See Dunn, 599 F.Supp. at 613 (and cases cited therein).
Given the general validity of exculpatory agreements under Missouri law, the overwhelming authority of other jurisdictions which have enforced exculpatory agreements in the racing context, and the persuasive reasoning of these jurisdictions which have done so, the Court has no hesitation in concluding that a Missouri court would uphold the validity of the Release at issue here.[3]
Second, plaintiffs have failed to set forth any facts surrounding the execution of the Release which would raise a genuine issue as to its enforceability. Plaintiffs note that Norman Haines, as a functional illiterate, did not understand the terms of the Release prior to signing it. They further note that he was never given an adequate opportunity to understand its terms as he was "pressured" into signing it. Such "pressure" is evidenced by the fact that the Release was first presented to him while waiting in line to enter the infield area and any attempt to read it at that time would have engendered considerable hostility on the part of other patrons who were waiting in line. These facts, standing alone, are insufficient to raise a genuine issue as to the Release's enforceability.
It is well settled in Missouri that, absent fraud, accident or mistake, "a person cannot avoid a written contract on the ground that he did not attend its terms, or that he supposed it was different in its terms, or that it was a mere form." Ragan v. Schreffler, 306 S.W.2d 494, 499 (Mo. 1957) (citations omitted). A person who is competent to contract is thus presumed to know the contents of the contract he signs. Muller v. Mutual Benefit Health & Association, 68 S.W.2d 873, 882-83 (Mo.App. 1934). That he does not read it or does not have it read to him before signing it does not rebut the presumption. "[W]here a person cannot read it is ordinarily as much his duty to procure some person to read or explain the contract or writing to him before he signs it as it would be to read it before he signs it if he were able to so do." Zeilman v. Central Mutual Life Insurance Association, 22 S.W.2d 88, 92 (Mo. App.1929).
In the instant case, plaintiffs do not contend that Norman Haines' execution of the Release was the product of fraud, accident or mistake. Nor on the facts presented can they do so. Thus it is clear that Norman Haines' inability to read or understand the Release is irrelevant. If Norman Haines is functionally illiterate, it was his duty to procure someone to read or explain the Release to him before signing it. He cannot now claim he was ignorant of its contents in an effort to avoid its plain terms.
It is equally well settled in Missouri that a voluntarily executed release, absent a showing of fraud, duress, illegality or mutual mistake, will be given full force and effect. Grand Motors, Inc. v. Ford Motor Co., 564 F.Supp. 34, 38 (W.D.Mo.1982) (citations omitted). Where, as here, there is no dispute as to the execution of a release, the burden is on the party attacking the release to establish its invalidity. McMahon *969 v. Meredith Corp., 595 F.2d 433, 438 (8th Cir.1979); Jenkins v. Simmons, 472 S.W.2d 417, 420 (Mo.1971). Presumably when plaintiffs contend that Norman Haines was "pressured" into signing the Release they contend that he did so under duress. However, plaintiffs have altogether failed to set forth any fact which would indicate that the execution of the Release was the product of duress.
The issue as to whether sufficient duress exists to invalidate a release depends on "whether or not the victim was so acted on by threats of the person claiming the benefit of the contract as to be bereft of the quality of mind essential to the making of a contract, and whether or not the contract was thereby obtained." Wolf v. St. Louis Public Service Co., 357 S.W.2d 950, 954-55 (Mo.App.1962). The party tendering the release must have engaged in some wrongful act which rendered the releasor unable to exercise his free will. Grant Renne & Sons, Inc. v. J.E. Dunn Const. Co., 633 S.W.2d 166 (Mo.App.1982). There are simply no facts which would support an inference that defendants engaged in some wrongful act which precluded Norman Haines from exercising his free will. Plaintiffs have not suggested that Norman Haines was denied an opportunity to read the Release. They do not state that he asked to read the document or have it explained to him. Indeed, if he was worried that he would slow the progress of the line, he could have either stepped outside of the line to read the Release or returned to the line after it had subsided to read it.
In this regard, the Court finds particularly persuasive the decision of the Massachusetts Supreme Court which confronted the identical issue in Lee v. Allied Sports Associates, Inc., 349 Mass. 544, 209 N.E.2d 329, 332 (1965). In Lee, the court rejected plaintiff's contention that he could not read the release at issue there because the line was "rolling along." In so doing, it reasoned:
We think that, having failed to avail himself of the opportunity, yet gaining the admission to which his signature was a condition precedent, he cannot now complain that he had no notice of the import of the paper which he signed.
Lee, 209 N.E.2d at 332. The Court concurs.
Third, plaintiffs have failed to demonstrate that the accident giving rise to their injuries is outside the scope of the Release. In construing the language of a release, as in construing the language of any contract, the intention of the parties is controlling. "Any question regarding the scope of a release is to be determined according to what fairly may be said to have been within the contemplation of the parties at the time the release was given." Montrose Savings Bank v. Landers, 675 S.W.2d 668, 670-71 (Mo.App.1984). Yet when the language of a release is plain and unambiguous on its face the intention of the parties is to be determined from the language of the release itself. Grand Motors, Inc. v. Ford Motor Co., 564 F.Supp. 34, 42 (W.D.Mo.1982); State ex rel. Stutz v. Campbell, 602 S.W.2d 874, 876 (Mo.App. 1980).
Applying the foregoing, the Court finds that the Release clearly and unambiguously encompasses the accident at issue here. Specifically, the Release exculpates from liability the promoter and track owner "for any and all loss or damage ... whether caused by the negligence of the Releasees or otherwise while the undersigned is in or upon the restricted area," which is defined to include the infield area where the accident occurred. Moreover, Norman Haines expressly assumed "full responsibility for any risk of bodily injury ... due to the negligence of Releasees or otherwise while in or upon the restricted area...." That defendant's alleged negligence in hiring an inexperienced driver to operate the push car and in constructing and maintaining the speedway constitute matters over which defendants have particular knowledge and control is of no import. Under Missouri law, the Court must give effect to the plain language of the Release.
The Illinois Supreme Court confronted a similar issue in Schlessman v. Henson, 83 Ill.2d 82, 46 Ill.Dec. 139, 413 N.E.2d 1252 (1980). There plaintiff was injured during the course of a racing event when a portion *970 of the speedway collapsed. The court rejected plaintiff's contention that the accident was not within the contemplation of the parties when he signed a release. In so doing, it stated:
The racing of automobiles at a high speed in limited areas gives rise to various situations which have resulted in the death or injury to drivers, mechanics and spectators at these events. These accidents may occur because of factors involving mechanical failures, defective design of guardrails, driver error or weather conditions affecting driving surfaces. In sum, a myriad of factors, which are either obvious or unknown, may singly or in combination result in unexpected and freakish racing accidents. Experienced race drivers, such as plaintiff, are obviously aware of such occurrences and the risks attendant to the sport of auto racing. The parties may not have contemplated the precise occurrence which resulted in plaintiff's accident, but this does not render the exculpatory clause inoperable. In adopting the broad language employed in the agreement, it seems reasonable to conclude that the parties contemplated the similarly broad range of accidents which occur in auto racing.
Schlessman, 46 Ill.Dec. at 140-41, 413 N.E. 2d at 1253-54. Here, as in Schlessman, plaintiff was a racing enthusiast who was aware of the risks of his chosen sport. Although the exact nature of the accident might not have been foreseen, it was certainly forseeable that he might have been injured while he stood in the infield area of the speedway.
Finally, the Court observes that Barbara Haines' claim for loss of consortium falls as dependent upon Norman Haines' claim.
Accordingly, and as the Court finds that there is no genuine issue as to whether Norman Haines executed the Release and that as a matter of law the Release exculpates defendants from any liability defendants may have incurred as a consequence of their alleged negligence, the Court grants both of defendants' motions for summary judgment.

ORDER AND JUDGMENT
Pursuant to the memorandum filed herein on this date,
IT IS HEREBY ORDERED that defendant Bob Wente's motion to dismiss or in the alternative for summary judgment be and it is granted.
IT IS FURTHER ORDERED that defendant St. Charles Speedway, Inc.'s motion to dismiss or in the alternative for summary judgment be and it is granted.
IT IS FURTHER ORDERED that defendant/third-party plaintiff's third-party complaint and third-party defendant/fourth-party plaintiff's fourth party complaint be and they are dismissed as moot.
In light of the foregoing,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that judgment on plaintiffs' first amended complaint be and it is entered in favor of defendants Bob Wente and St. Charles Speedway, Inc. and against plaintiffs Norman Haines and Barbara Haines.
NOTES
[1] Bob Wente has filed a third-party complaint against Mike Thurman. In his complaint, he alleges the accident was directly and proximately caused by the negligence and carelessness of Mike Thurman and thus, if he is found liable to plaintiffs, that Mike Thurman is responsible for all or part of plaintiffs' claims against him.
[2] Mike Thurman, in turn, has filed a fourth party complaint against Joe Dyson and Bob Elders Cadillac, Inc. In his complaint, he alleges the accident was directly and proximately caused by the negligence and carelessness of Joe Dyson and Bob Elders Cadillac, Inc. and thus, if he is found liable to plaintiffs, that Joe Dyson and Bob Elders Cadillac, Inc. is responsible for all or part of plaintiffs' claims against him.
[3] Plaintiffs also contend that the Release is tantamount to an adhesion contract and that as such it is unenforceable. However, under Missouri law the mere fact that an agreement is embodied in an adhesion contract does not render it unenforceable. See Estrin Construction Co. v. Aetna Casualty & Surety, 612 S.W.2d 413, 418 n. 3 (Mo.App.1981). See also Schlessman v. Henson, 83 Ill.2d 82, 46 Ill.Dec. 139, 141, 413 N.E.2d 1252, 1254 (1980) (rejecting contention that a similar release was tantamount to a contract of adhesion and thus unenforceable).