**Deborah H. JONES, Appellant,**

v.

**Ernie HANNA, Individually and d/b/a Econo–Self Storage and Robert Ziegler, Appellees.**

**No. 90–CA–1670–MR.**

Court of Appeals of Kentucky.

Aug. 16, 1991.

Pamela Yvette Hourigan, Landrum & Shouse, Lexington, for appellant.

R. Craig Reinhardt, Fowler, Measle & Bell, Lexington, for appellees.

Before CLAYTON, HOWERTON and McDONALD, JJ.

McDONALD, Judge.

This is an appeal from a summary judgment which denied Appellant/Plaintiff Deborah Jones' claim for loss of personal property valued at $16,241.00 that was stored in a "mini-warehouse" owned by Appellee Ernie Hanna, d/b/a Econo–Self Storage.

On September 2, 1987, Deborah Jones, along with her father, signed a "Storage Rental Space Agreement" with Econo–Self Storage. Jones needed to store her personal belongings and furniture because of the flooding of her apartment. By deposition Jones testified that Econo–Self Storage was selected because its manager, Robert Ziegler, assured her that twenty-four hour security was provided at the facility. She

admitted that she did not read the agreement very well.

On May 2, 1988, Deborah Jones learned that the lock to her storage unit had been cut and that virtually all of her possessions were stolen. The date and time and other circumstances of the theft are not known by any of the parties.

Deborah Jones filed suit alleging that appellees failed to maintain a safe and secure storage area for her goods.

Summary judgment was entered in favor of the appellees based on the signed agreement between the parties. The self-storage agreement is written as a lease and designates the parties as landlord and tenant. Deborah Jones as tenant leased a warehouse storage space which was 10 feet by 10 feet, on a monthly term of $45. The agreement, in part, provides:

2. *Use:* The premises may be used and occupied only for the purpose of storing personal property.... All property kept, stored or maintained within the premises by Tenant shall be at Tenant's sole risk.

3. *Insurance and Indemnity:* ... Each party hereby waives its right of subrogation against the other party. Landlord shall not be liable to Tenant or to any other person on the premises for any loss or damage to Tenant, its employees, agents or guests, to the personal property of Tenant or such other person, caused by any acts of negligence whatsoever,....

The trial court dismissed the complaint, thereby rejecting the argument that the facts created a bailment. The trial court construed the contract as creating a lease between the parties.

The first issue on appeal is that summary judgment was inappropriate in this case.

The argument fashioned is the traditional one that a summary judgment, being a drastic remedy, takes away the right to have factual issues resolved by a jury. Naturally, we agree with Jones' argument as far as it goes, and the latest pronouncement by our Supreme Court in *Steelvest,*

*Inc. v. Scansteel Service Center, Inc.,* Ky., 807 S.W.2d 476 (1991), does give a great amount of comfort to the appellant. *Steelvest* reaffirms the Kentucky standard for granting summary judgments, "... as a matter of law, it appears that it would be impossible for the respondent to produce evidence at the trial warranting a judgment in his favor ... is only proper where the movant shows that the adverse party could not prevail under any circumstances." *See also, Paintsville Hospital Company v. Rose,* Ky., 683 S.W.2d 255 (1985).

We would agree with Jones if the circumstances created a bailment. However, if the circumstances and agreement made a lease, then the summary judgment was proper because the lease agreement placed all the risk of loss on Jones, the tenant. If a lease be established, then summary judgment was warranted.

### Public Policy Argument

■ Jones argues that the agreement by virtue of the provision that waived each party's right of subrogation along with the landlord's future negligence is against the public policy of the Commonwealth. No authority was cited for this argument; however, our research produced several cases giving direction on this issue. We might say the case law is inconsistent and constitutes misdirected guidance.

In *Greenwich Ins. Co. v. Louisville & N.R. Co.,* 112 Ky. 598, 66 S.W. 411 (1902), our highest court construed a similar exculpatory lease provision as presented in our case. It was provided that the railroad would be held harmless by the lessor if injury or loss was caused "by reason of fire from locomotives, or *from any cause whatsoever.*" (Emphasis added). The lessor built a cold storage house on the railroad's right-of-way, which was later destroyed by fire. The opinion said in part:

The Court is of opinion that appellee railroad company is not liable for the destruction or damage to the building under the contract quoted, except for wilful or wanton negligence of its servants. For mere carelessness, however gross, short of wantonness or wilfulness, it will not be liable.

On the other hand, the case goes on to say that to secure in advance indemnity against the result of your own negligence is clearly against public policy. But the case pivoted on the point that if the parties are dealing at arm's length and upon an equal footing, then the following principle is imposed at page 413: "It is not so much that the railroad company contracts against its own negligence as that the [tenant] agrees to alone bear all risks from fire." The aforesaid quote certainly applies to our case.

*Zeitz v. Foley,* Ky., 264 S.W.2d 267 (1954), also limits the public policy argument by the following declaration:

> However, contracts voluntarily made between competent persons are not to be set aside lightly. As the right of private contract is no small part of the liberty of the citizen, the usual and most important function of courts is to enforce and maintain contracts rather than to enable parties to escape their obligations on the pretext of public policy or illegality. If the legality of the contract can be sustained in whole or in part under any reasonable interpretation of its provisions, courts should not hesitate to decree enforcement.

However, a different rule is found in *Meiman v. Rehabilitation Center, Inc.,* Ky., 444 S.W.2d 78 (1969), where a release for future negligence (an exculpatory clause) for causing personal injury was prohibited as against public policy. But an exculpatory clause was found not to be unconscionable in a claim over a negligently handled yellow page ad in *Louisville Bear Safety Service, Inc. v. South Central Bell Telephone Company,* Ky.App., 571 S.W.2d 438 (1978).[1]

On bringing this issue to a close, a federal circuit court analyzed the Kentucky case law and became perplexed at its disarray, but did conclude that one may contract away future negligence if such is not wilful and wanton, and not resultant in personal injury. *See Donegan v. Beech Bend Raceway Park, Inc.,* 894 F.2d 205 (6th Cir.1990). We agree and adopt this admonition found in *Greenwich Ins. Co., supra,* at 413, "We cannot see that the public are in any wise affected by such a contract, nor can they be."

■ Next, the appellant claims that a bailment situation was created when she delivered her personal property in trust to the appellee's place of business.

A "bailment," in its ordinary legal signification, imports the delivery of personal property by one person to another in trust for a specific purpose, with a contract, express or implied, that the trust shall be faithfully executed, and the property returned or duly accounted for when the special purpose is accomplished, or kept until the bailor reclaims it.

8 Am.Jur. *Bailments* § 2. *See also, Commonwealth v. Polk,* 256 Ky. 100, 75 S.W.2d 761 (1934).

The question is whether a bailment was created, notwithstanding the lack of a contract. Because a bailment is created by contract, we assume that its creation may be limited or exterminated by contract as well, which was done in this instance. The subject matter of the agreement herein clearly was for the rental of a definite space.

> While the fact that one rents a definite space in which to store goods does not show conclusively that the arrangement is a lease rather than a bailment, one who merely grants storage room, without assuming, expressly or impliedly, any duty or responsibility with respect to the care or control of the property stored, is not a bailee.

8 Am.Jur.2d *Bailments* 31.

In our fact pattern, the storage units, 180 in all, were protected by a 6 ft. fence and a locked gate. The tenants placed their own locks on the units. No security dogs or watchmen were provided. Access could be made to the units between 6 a.m. and 9 p.m. daily. No inventory was made of the goods by the facility owner, and the goods were never placed in the hands of

---

1. For a discussion of exculpatory clauses and the doctrine of unconscionability under the Uniform Commercial Code, consult 41 Vanderbilt Law Review, *Commercial Bailments,* 129 (1988).

the landlord. In fact, it is unknown by the landlord what was stored.

Appellee, Ernie Hanna, by deposition explained: "Just storage units that you control. You put your own lock on and come and go as you please when the gates are open."

In summary, there was no delivery of Jones' personal property to the appellees, no exercise of control over the property by the appellees and no actual possession by the appellees. Therefore, basic elements of conventional bailment are lacking in conjunction with a clear agreement that only space was being rented. This plainly leads us to the conclusion that the rental agreement controls the rights of parties.

Because public policy does not prohibit making a bad bargain, summary judgment was proper as a matter of law based on the agreement. *See Bonded Elevator, Inc. v. First National Bank of Louisville,* Ky., 680 S.W.2d 124 (1983), and *Bennett v. Southern Bell Telephone and Telegraph Company,* Ky., 407 S.W.2d 403 (1966).

All concur.