Margaret L. COUGHLIN and John H. Coughlin, individually and as Co–Administrators of the Estate of William J. Coughlin, deceased, Plaintiffs,

v.

T.M.H. INTERNATIONAL ATTRACTIONS, INC., a Kentucky corporation, Gordon Hall, and David Hardin, Defendants.

No. C–94–0029–BG(H).

United States District Court,
W.D. Kentucky,
Bowling Green Division.

Aug. 16, 1995.

Lee Huddleston, Huddleston & Flener, Bowling Green, KY, Francis A. Citera, Aimee B. Storin, Pope, Cahill & Devine, Chicago, IL, for plaintiffs.

John David Cole, Cole, Moore & McCracken, Bowling Green, KY, for defendant.

David Hardin, Cave City, KY, pro se.

## MEMORANDUM OPINION

HEYBURN, District Judge.

This matter is before the Court on Motion for Partial Summary Judgment by two of the Defendants. T.M.H. International Attractions, Inc. ("T.M.H."), the owner of the property on which Plaintiffs' son died, and Gordon Hall, the President and controlling shareholder of T.M.H., assert that Kentucky law bars Plaintiffs' recovery for the effects of Defendants' negligence because Plaintiffs' son had signed a release before participating in Defendants' cave exploration tour. For the reasons stated herein, the Court denies Defendants' Motion for Partial Summary Judgment.

### I.

On Friday, May 28, 1993, William J. Coughlin and two of his friends, James Jakala and Kevin Feeley traveled from Illinois to Cave City, Kentucky. While in Cave City, the young men read T.M.H.'s brochure that advertised two tours available to the public at Buzzards Roost Cave. The brochure described a "Historic Tour" and a "Wild Cave Tour." The Historic Tour provided guided viewing of easily accessible areas of the cave. In contrast, the Wild Cave Tour, which the

brochure described as appropriate for "the more daring visitor," provided guided exploration of unimproved areas and "require[d] crawling, twisting and squeezing through the lower passages of the cave." (Buzzards Roost Cave Tour Brochure, Dkt. 49, Exh. A).

On Sunday, May 30, 1993, Coughlin, Jakala, and Feeley went to Buzzards Roost Cave to participate in the cave tours. None of the young men were experienced cavers. They first chose to participate in the Historic Tour. Before embarking on the tour, all three signed a release form that consisted of the following text:

> We the undersigned hereby accept the following special conditions and in recognition that speleology is an inherently dangerous recreational activity, we voluntarily assume all risks and shall indemnify and hold the owners, operators, and employees of Buzzards Roost Historic Cave harmless from all claims, suits, actions, damages and costs of every name and description arising out of or resulting from the privileges granted by this permit including damages caused by or resulting from the sole or joint negligence of the owners, operators, or employees of Buzzards Roost Historic Cave. Additionally, I accept and understand the aforementioned conditions apply to any minor we escort.

Each caver did not have his own form to sign, but rather signed one document passed amongst the group.

Coughlin and Jakala completed the Historic Tour, which Co–Defendant David Hardin guided, and then elected to participate in the Wild Cave Tour offered that afternoon. Coughlin, Jakala, and four other persons paid Hardin to conduct the Wild Cave Tour. Hardin asked each to sign a release form with language identical to that above.

Before the tour began, Hardin gave the group two hand-held flashlights. He also instructed the group members that he would lead the exploration and that each person should navigate the cave in the same fashion as the person in front of him or her. After crawling through part of the cave for a while, the group reached a thirty-foot hanging cable ladder with wooden rungs ("the first ladder"). The group descended this ladder,

crawled a short distance, and then reached the second ladder, a fifteen-to-twenty-foot hanging cable ladder. The second ladder, although shorter, was more difficult to navigate because it hung over a rock protrusion, which made it difficult to grip the rungs adequately. Shortly after the group descended the second ladder, Hardin announced that the official tour had ended, but that the group was free to explore nearby passages.

Sometime around 7:00 P.M., Hardin gathered the group together and informed them that they were behind schedule. He told the group that he was going to leave to make a phone call. He then left the group at the bottom of the second ladder between 7:00 and 7:15 P.M.. When Hardin did not return after thirty to forty-five minutes had elapsed, the group attempted to exit the cave. Coughlin unsuccessfully tried twice to climb the second ladder. Jakala then asked two persons in the group to exit the cave in order to find Hardin. After waiting a while for Hardin to return, Coughlin attempted to climb the ladder again, but he slipped and fell. He hit his head on the rock protrusion, fell several feet and landed on his head, which began to bleed profusely.

At Jakala's request, several members of the group exited to summon Hardin, who returned without a medical kit and without having requested the assistance of medical or rescue personnel. Hardin strove to help Coughlin leave the cave, but Coughlin became wedged in a rock formation as he was attempting to crawl to safety. Having been trapped in the passageway for seven hours, Coughlin died of his injuries the next day.

## II.

Defendants T.M.H. and Gordon Hall assert that they are entitled to partial summary judgment in their favor with respect to Plaintiffs' negligence claims because Bill Coughlin released Defendants from liability for all claims arising from their negligence when he executed a waiver before embarking on the Wild Cave Tour. Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving

party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. In considering a motion for summary judgment, the Court must view all the facts and inferences drawn therefrom in the light most favorable to the non-moving party. *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987).

## III.

Defendants' Motion for Partial Summary Judgment is based entirely on their assertion that Bill Coughlin released all claims of negligence, including gross negligence, when he signed a waiver absolving Defendants of liability on May 20, 1993.[1] To come to a conclusion, the Court must consider existing statutes, which may have importance as to the intentions of the Kentucky legislature as well as common law justifications for the various branches of Kentucky law.

The Kentucky legislature has drafted two statutes which touch upon concerns of this case. The Recreational Use Statute, Ky.Rev. Stat. § 411.190, states that a property owner is not liable for any negligence towards those who enter the property for recreational purposes unless the property owner charges the entrants. The Cave Protection Statute, Ky. Rev.Stat. § 433.883, mirrors this language in relation to cave owners. By negative implication, the legislature has suggested that owners who charge for cave exploration do not receive special treatment and that if one charges for such activity, one might be expected to shoulder responsibility for any consequences. These statutes, although not dispositive in our case, thus demonstrate that the legislature did not intend to encourage the commercial exploitation of caves. The Court must be very careful before it endorses a common law rule which encourages contrary conduct.

The Kentucky common law suggests that the Court use similar caution. Well-settled roots of Kentucky law supports a public policy that disfavors and, indeed, bars exculpatory agreements from enforcement. In analyz-

ing exculpatory agreements as to one party's negligence, courts must look to whether the public interest requires performance of the duties in the agreement and whether the parties stand on an equal footing with one another. *See Meiman v. Rehabilitation Center, Inc.,* 444 S.W.2d 78 (Ky.1969). In a more recent opinion considering the validity of a release from liability for negligence, a Kentucky Appeals court held that the release is against public policy if the parties possess unequal bargaining power. *See Jones v. Hanna,* 814 S.W.2d 287 (Ky.App.1991). The *Jones* court also relied upon well-settled law in Kentucky that "releases must be interpreted narrowly, and against the protected party." *Cobb v. Gulf Refining Co.,* 145 S.W.2d 96, 99 (Ky.1940).

The federal courts of Kentucky as well as the Sixth Circuit have nourished a narrow branch of this well-settled root in cases involving race car driving and bicycle racing. In doing so, the courts have cautiously analyzed each situation in light of public policy. For example, in *Dunn v. Paducah International Raceway,* 599 F.Supp. 612 (W.D.Ky. 1984), the Court established the race track exception to the general rule, holding that an injured Plaintiff could not place liability on Defendants because he had signed a waiver. The Court considered the following factors:

1. The voluntary signing of the release

2. The equal bargaining power of the parties

3. The public interest in the activity

4. The recreational nature of the activity

5. The knowledge and familiarity of Plaintiff with activity

*Id.* At 612, 613, *Donegan v. Beech Bend,* 894 F.2d 205, 207 (6th Cir.1990). The Sixth Circuit upheld the decision in *Dunn* in *Donegan v. Beech Bend,* 894 F.2d 205 (6th Cir.1990). The Sixth Circuit also held that although one may be released of liability for ordinary or gross negligence, one may not be released of

---

1. Because Defendants owned the property on which Bill Coughlin died and shared the proceeds generated from the Wild Cave Tour pursu-

ant to a lease agreement with David Hardin (Dkt. # 26, Lease Dated April 16, 1993), the validity of

liability for willful and wanton negligence.[2]

Defendants ask the Court in this case to fashion an addition to the narrow exception of the well-established rule. However, in light of public policy concerns enunciated by Kentucky's highest court in *Meiman* and by federal courts, this Court cannot find that Mr. Coughlin released Defendants of liability by signing the release form.

Mr. Coughlin was an inexperienced caver who knew little about the activity of spelunking. He may have voluntarily signed the release; however, he was not on an equal footing with the Defendants. Mr. Coughlin did not know of the dangers inside the cave—the release read more as an enticement than as a warning of specific risks that the tour members would confront. Thus, Mr. Coughlin relied entirely on his tour guide and the cave operators for his own safety, instead of on his own expertise or familiarity with spelunking.

Furthermore, there are no public interests in encouraging commercial caving by validating releases under these circumstances. In an activity such as competitive racing, the public's interests are a factor, and invalidating a release may lead to a decrease in such events because track owners fear liability. However, the public's interests are considerably different in this instance. Cave exploration is not a competitive sport which involves the public; here, it was a supervised and structured activity. Even if it is true that some cave owners will now discontinue commercial tours for fear of liability without valid releases, this does not overcome the evident public interest in the physical safety and legal protection of our citizens.

Moreover, a tour of a cave does not qualify as a recreational activity as the courts in *Dunn* and *Donegan* have construed it. In both those cases and in *Estate of Peters v. U.S. Cycling Federation*, 779 F.Supp. 853 (E.D.Ky.1991), the injured Plaintiff was involved in a competitive racing activity. The activity occurred in the presence of the public and involved trained individuals in car or bicycle racing events. The case at bar stands in stark contrast. The Court cannot construe this cave tour as a recreational activity on the same par with auto racing or bicycle racing.

Therefore, absent expansion of the narrow exception, the general rule against waiver of liability must stand. The Court finds insufficient justification for believing that Kentucky courts would carve a further exception for all activities that are recreational in nature and involve releases. The Sixth Circuit has very cautiously analyzed such situations on a case by case basis and this Court has done the same. For the reasons stated above, the Court will deny Defendants' Motion for Partial Summary judgment.

The Court will issue an Order consistent with this Memorandum.

### ORDER

This matter is before the Court on Motion for Partial Summary Judgment, which was brought by Defendant T.M.H. International Attractions, Inc., and Defendant Gordon Hall. The Court having issued a Memorandum Opinion, and being otherwise sufficiently advised,

IT IS HEREBY ORDERED that Defendants' Motion be DENIED.

---

the waiver affects their potential liability also, as they are parties to the contract that it created.

**2.** At this time, the Court will not decide whether Defendants may be liable for negligence, and if so, to what extent. That question is reserved for the trier of fact.