**ESTATE OF Edwin PETERS by Pamela PETERS, Administratrix, Pamela Peters, Individually, Pamela Peters, as Guardian and Next Friend of Lesley Roberts, a minor, Plaintiffs,**

v.

**UNITED STATES CYCLING FEDERATION, Cincinnati Velo Club, Randy Folz, and John Doe, et al. (Members of Cincinnati Velo Club), Defendants.**

Civ.A. No. 90–97.

United States District Court,
E.D. Kentucky,
at Covington.

Nov. 13, 1991.

Gregory T. Hughes, Ludlow, Ky., for plaintiffs.

William D. Kirkland and Sarah M. Jackson, Frankfort, Ky., for defendants.

## MEMORANDUM OPINION AND ORDER

BERTELSMAN, Chief Judge:

This is a diversity action for the wrongful death of Edwin Peters, brought by his estate, spouse and minor child. Mr. Peters' death occurred while he was a participant in a bicycle road race in Boone County, Kentucky.

## BACKGROUND

The decedent was a 51–year–old man, an executive who lived and worked in New Jersey. Although an amateur, he had been a competitive cyclist for over thirty years and was generally considered a national amateur cycling champion. On July 1, 1989, the decedent participated in a bicycle race organized by the Cincinnati Velo Club and sanctioned by the United States Cycling Federation. On this day, the competition was a road race that took place on country roads in Boone County, Kentucky. The roads were closed to all but local traffic, and the contestants rode in heats, divided by age in the morning and skill in the afternoon. Decedent rode in a morning heat of approximately 27 participants. The accident occurred when decedent and the other riders came down a hill at the bottom of which was a sharp turn. Decedent's bicycle went off the road, and he was thrown into a tree. His injuries were fatal.

Most of the information about the race course came from the deposition of Michael Hewitt, an official of the United States Cycling Federation, who was present at the race on July 1, 1989. Mr. Hewitt reviewed the course in the spring prior to the race. He was aware of the dangers presented in the course and detailed the precautions that were taken in that regard.

Before each group of riders began the race, a riders' meeting was held to go over

the rules in effect during this particular race. For example, on July 1, 1989, Mr. Hewitt imposed the "yellow-line rule," a rule that the riders may not drift across the yellow line in the road. The riders were provided with a map prior to the race so that they could ride the course the previous day. The race officials, however, did not provide an opportunity to ride the course on July 1, 1989, because of time constraints.

Marshals were stationed throughout to keep all but local traffic off the course and to warn riders of approaching dangers. At the top of the hill where the accident occurred, the promoters posted a large sign warning the riders of the descent and curve in the road. They also posted a sign about the layout of the course at the registration area at the beginning of the race.

In addition, a state trooper was stationed at the bottom of the hill to stop any traffic from coming up the hill. Finally, Mr. Hewitt indicated that the minimum lane width he liked to have on a road race was eight feet. The width of the lane where Mr. Peters went off the road was seven feet eight inches. While it appears that the race promoters had no required standards to follow in choosing the course or providing for the riders' safety, they followed certain conventions such as the yellow-line rule and took precautions they felt desirable.

Prior to entering this race and also in renewing his license with the United States Cycling Federation, decedent signed two waivers releasing the promoters and sponsors of bicycle races and sporting events in which he participated from liability for any injuries he sustained. In addition, the "Athlete's Entry and Release Form," which decedent executed in registering for the race in question, placed the responsibility on each contestant to be familiar with the race course. Plaintiffs have not challenged the validity of these releases.

## LEGAL ANALYSIS

 A release may be given effect as a valid contractual agreement as long as it does not exempt liability for intentional conduct or allow a party to breach a duty owed to the public (i.e. is against public policy). *Cobb v. Gulf Refining Co.,* 284 Ky. 523, 145 S.W.2d 96 (1940). Both parties cite *Dunn v. Paducah Int'l Raceway,* 599 F.Supp. 612 (W.D.Ky.1984), for the proposition that releases executed by participants in automobile races are presumptively valid and embody an exception to the policy disfavoring releases. Defendant argues that the Sixth Circuit has condoned *Dunn,* and that *Dunn* was expressly extended to similar sporting events. Finally, in *Donegan v. Beech Bend Raceway Park, Inc.,* 894 F.2d 205 (6th Cir.1990), the Sixth Circuit held that under Kentucky law, a release operates as an exemption of liability for negligent acts, but not willful or wanton conduct. Therefore, plaintiffs cannot maintain an action against defendants based on negligence because of the releases signed by decedent.

In order to overcome defendants' motion for Summary Judgment, plaintiffs must make a showing of willful or wanton conduct by the defendants sufficient to create a genuine issue of material fact. Defendants have the following burden:

"3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.

"4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case."

*Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989) (footnotes omitted). Kentucky law provides the substantive standards for determining whether a genuine issue concerning defendants' conduct exists.

 Kentucky courts adhere to the following definition of willful or wanton conduct:

"[T]o constitute willful or wanton negligence it is not necessary to show ill will toward the person injured, but an entire absence of care for the life, person, or property of others which exhibits indifference to consequences makes a case of

constructive or legal willfulness. A complete indifference to consequences distinguishes wrongs caused by wantonness and recklessness from torts arising from negligence."
*Louisville & N.R. Co. v. George,* 279 Ky. 24, 129 S.W.2d 986, 989 (1939) (citation omitted). A more recent case added this twist to the definition: "Just as malice need not be expressed and may be implied from outrageous conduct, so too may wanton or reckless disregard for the lives and safety of others be implied from the nature of the misconduct." *Horton v. Union Light, Heat & Power Co.,* 690 S.W.2d 382 (Ky.1985). This definition must be applied to plaintiffs' allegations to determine whether or not they have succeeded in raising a genuine issue of material fact on this point.

■ Plaintiffs provided a list of actions defendants did or did not take in relation to the hill and curve where decedent's accident occurred.[1] Mr. Hewitt admitted in his deposition testimony that he was concerned about the hill when he made an initial inspection of the race course. He further testified that a sign was posted at the crest of the hill to warn the riders that they were approaching it, and a police officer was stationed in the vicinity of the hill. In addition, information about the course, including its layout, was provided to participants at registration. Plaintiffs have failed to demonstrate that any further precautions were required. The fact that defendants took any precautions at all demonstrates that they did not disregard the danger presented by this portion of the course. The argument that defendants should have provided better warnings or required the riders to ride through the course prior to

the competition only go to whether defendants acted negligently. It does not rise to the level of willful or wanton misconduct.

Plaintiffs raise other allegations that are unrelated to decedent's accident. For instance, they claim that the course was not closed as promised since Hewitt made a statement that a doctor was jogging by just after the accident (this statement is unclear as to exact timing), yet they do not show how this contributed to decedent's accident.

Plaintiffs face additional problems in demonstrating causation, particularly since many of their allegations center on defendants' omissions. Despite these problems in their case, plaintiffs have not put forth sufficient proof that defendants acted with an "indifference to consequences" of their decisions. Based on the scanty evidence currently before the Court, no trier of fact could find otherwise.

Based on the standards articulated in *Street,* 886 F.2d 1472, this is an appropriate case for summary judgment.

Therefore, the court being advised,

IT IS ORDERED that defendants' Motion for Summary Judgment be, and it is, hereby GRANTED. A separate Judgment shall enter concurrently herewith dismissing this action.

---

1. Given all of the foregoing, the defendant knowingly failed to heed a number of significant warnings that this course should not have been used. The defendant recognized the following:

 "1) The curve needed to have a warning posted.
 2) An accident occurred earlier in the day.
 3) Tight courses require a ride through.
 4) The only inspection was drive through in a car.
 5) No one rode the course prior to the race.

7) (sic) Traffic cones were placed on the curve.
8) The course was not closed as promised.
9) The highway department sign is deceptive.
10) Defendants acknowledge the hill "could fool you[.]"
 All of the foregoing more than amply demonstrates that the Defendants were at least negligent."
Plaintiff's Supplemental Memorandum in Opposition to Defendant's Motion for Summary Judgment at 5 (citations omitted).