RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0011p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RICHMOND HEALTH FACILITIES – KENWOOD, LP;
PREFERRED CARE PARTNERS MANAGEMENT GROUP,
LP; PREFERRED CARE, INC.; KENTUCKY PARTNERS
MANAGEMENT GROUP, LLC,

> *Plaintiffs-Appellants*,

*v.*

ADRIANNE NICHOLS, Executor of the Estate of
Charlie Nichols,

> *Defendant-Appellee*.

No. 15-5062

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:14-cv-00141—Danny C. Reeves, District Judge.

Argued: October 6, 2015

Decided and Filed: January 15, 2016

Before: KEITH, ROGERS, and GRIFFIN, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Marcia L. Pearson, WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP,
Louisville, Kentucky, for Appellants. Robert E. Salyer, WILKES & MCHUGH, P.A.,
Lexington, Kentucky, for Appellee. **ON BRIEF:** Marcia L. Pearson, Edward M. O'Brien,
WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP, Louisville, Kentucky, for
Appellants. Robert E. Salyer, WILKES & MCHUGH, P.A., Lexington, Kentucky, for Appellee.

---

**OPINION**

---

DAMON J. KEITH, Circuit Judge.   Charlie Nichols was admitted to a nursing and rehabilitation facility, now operated by Plaintiffs, and subsequently passed away.  The executrix of his estate, Adrianne Nichols ("Defendant"), sued Plaintiffs in state court, asserting various Kentucky state-law claims, including wrongful death.  Plaintiffs filed suit in federal court to compel arbitration of these claims under an Arbitration Agreement (or, "Agreement") Mr. Nichols had entered into with the facility.  The facility and the decedent, Mr. Nichols, were the only signatories to the Agreement.  The federal district court denied the motion to compel arbitration of the wrongful-death claim, granted the motion with respect to other claims, and stayed the case until arbitration of those claims was complete.  Plaintiffs appeal the denial of the motion to compel arbitration of the wrongful-death claim.  For the reasons set forth below, we **AFFIRM** the district court's decision.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiffs set forth the following allegations in the Complaint:

On October 14, 2011, Mr. Nichols was admitted to the Kenwood Nursing & Rehabilitation Center ("Center"), a nursing facility in Richmond, Kentucky. R. 1, ¶ 12.  Upon admission, Mr. Nichols entered into the Agreement with the Center.  *Id.* ¶ 13.  In relevant part, the Agreement states the following:

- It applies to "any and all disputes arising out of or in any way relating to this Agreement" including "wrongful death." *Id.* ¶ 14.

- It is governed by "The Kentucky Uniform Arbitration Act. . . . If for any reason there is a finding that Kentucky law cannot support the enforcement of this Agreement, then the Parties agree to resolve their disputes by arbitration . . . pursuant to the [FAA]." *Id.* ¶ 19.

- It binds Charlie Nichols and all persons with claims through or on behalf of him, including "any personal

representative, responsible party, guardian, executor, administrator, legal representative, agent or heir." *Id.* ¶ 15.

On June 22, 2012, Mr. Nichols filed a lawsuit in Madison Circuit Court ("State Court Action") concerning the care provided by the Center. *Id.* ¶ 25. Plaintiffs were not named as parties to that State Court Action. *Id.* Plaintiffs took over the Center on July 1, 2012. *Id.* ¶ 24. Mr. Nichols passed away on October 28, 2012. *Id.* ¶ 25. Defendant was named as administratrix of his estate. *Id.* On February 6, 2014, Defendant filed an amended complaint in the state court, asserting several claims against Plaintiffs, including wrongful death. *Id.* But on April 11, 2014, four defendants in the lawsuit pending in Kentucky state court—Plaintiffs here[1]—filed this action in federal court to compel arbitration under the FAA, and to enjoin the State Court Action. *Id.*

Plaintiffs moved to compel arbitration of all claims pursuant to the Agreement. R. 11. Defendant argued that, under *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012), *cert. denied*, 133 S. Ct. 1996 (2013), arbitration of the wrongful-death claim is not required. R. 12. In response, Plaintiffs argued, among other things, that the portion of *Ping* relevant to this case is preempted by the FAA. R.14. On December 19, 2014, the district court ruled that *Ping* was not preempted, and denied the motion to compel arbitration of the wrongful-death claim. The court otherwise granted the motion with respect to the other claims. R. 15. The district court further stayed the case until arbitration of those claims was complete. *Id.* Plaintiffs timely appealed the denial on January 15, 2015. R. 16.

## II.    STANDARD OF REVIEW

We review a district court's ruling on a motion to compel arbitration de novo. *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000); *see also M&C Corp. v. Erwin Behr GMBH & Co.*, 143 F.3d 1033, 1037 (6th Cir. 1998) ("A determination of the arbitrability of a dispute is subject to *de novo* review.").

---

[1]Plaintiffs comprise Richmond Health Facilities-Kenwood, LP; Preferred Care Partners Management Group, LP; Preferred Care, Inc., Kentucky Partners Management Group, LLC. R. 1, ¶¶ 1-4. Plaintiffs allege that they are the "successors and assigns" of the operators that executed the Arbitration Agreement. *Id.* ¶ 24.

## III.   ANALYSIS

### A.   The Federal Arbitration Act

The FAA "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006)). Notwithstanding this "liberal federal policy favoring arbitration agreements," *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 24 (1983), arbitration is a "matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted).

"Before compelling an unwilling party to arbitrate"—as Plaintiffs seek to do here—"the court must engage in a limited review to determine whether the dispute is arbitrable; meaning that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 624 (6th Cir. 2003).

Under the FAA, "[a] written agreement to arbitrate disputes arising out of a transaction in interstate commerce 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2); *see also* 9 U.S.C. § 3 (providing for a stay of federal lawsuit involving issues subject to an arbitration agreement).

Neither section 2 nor section 3 of the FAA "purports to alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). So in determining the enforceability of an arbitration agreement, we apply state law of contract formation. *Seawright*, 507 F.3d at 972; *see also Tillman v. Macy's, Inc.*, 735 F.3d 453, 462 (6th Cir. 2013) (holding that arbitration agreement was enforceable under Michigan law on offer and acceptance); *Hergenreder v. Bickford Senior Living Grp., LLC*, 656 F.3d 411, 416–17 (6th Cir. 2011) (applying Michigan law to determine enforceability of an arbitration agreement); *Dantz v. Am.*

*Apple Grp., LLC*, 123 F. App'x 702, 706 (6th Cir. 2005) (determining enforceability of arbitration agreement under Ohio contract law). "When it comes to 'state laws applicable *only* to arbitration provisions,' however, the [FAA] preempts those state laws." *Hergenreder*, 656 F.3d at 416–17 (quoting *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

### B.        Merits of this Appeal

This case boils down to whether Defendant is bound by the Agreement to arbitrate the wrongful-death claim. In arguing that she is not bound, Defendant relies on the Kentucky Supreme Court's reasoning in *Ping*. Under *Ping*, a wrongful-death claim is "independent" of any claims held by a decedent. *Ping*, 376 S.W.3d at 597. This means that a wrongful-death claim is a "distinct interest in a property right that belongs *only* to the statutorily-designated beneficiaries"; decedents have no "cognizable legal rights" in that claim. *Extendicare Homes, Inc. v. Whisman*, Nos. 2013-SC-000426-I, 2013-SC-000430-I, 2013-SC-000431-I, 2015 WL 5634309, at *2 (Ky. Sept. 24, 2015).[2] Accordingly, Defendant argues that she is not required to arbitrate the wrongful-death claim. Plaintiffs, however, argue that *Ping* is preempted by the FAA, and that we cannot apply its reasoning.

As explained above, the FAA does not alter basic principles of state contract law, and so we must apply Kentucky law to determine whether the Agreement is enforceable. We therefore turn to *Ping* to ascertain the enforceability of the Agreement.

#### 1.   Defendant is not a party to the Agreement under *Ping* and so is not required to arbitrate the wrongful-death claim.

The Kentucky Supreme Court's ruling in *Ping* is dispositive of the issue before us because it is factually analogous to the case here. There, the executrix of the decedent's estate sued the operators of a long-term care facility. *Ping*, 376 S.W.3d at 586. The executrix alleged that the facility staff breached statutes regulating nursing care services, resulting in the decedent's injuries and wrongful death. *Id.* Relying on an arbitration agreement executed between the executrix, in her capacity as the decedent's agent, and the facility, the operators

---

[2]By contrast, a "derivative claim" is one dependent on a wrong committed against the decedent; such claims are brought to "recover for injuries to the decedent." *Moore v. Citizens Bank of Pikeville*, 420 S.W.2d 669, 672 (Ky. 1967).

moved to dismiss the complaint or to stay the litigation pending the arbitration. *Id.* at 587. The trial court denied the motion, holding that the executrix lacked the authority to agree to arbitration. *Id.* at 586. The Kentucky Supreme Court agreed. *Id.* In the alternative, the Kentucky Supreme Court also held that the facility could not compel arbitration under Kentucky's wrongful-death statute because the wrongful-death claim does not "derive from any claim on behalf of the decedent." *Id.* at 600; *see* KRS 411.130. Thus, the arbitration agreement could not provide a basis for compelling the wrongful-death beneficiaries to arbitrate the wrongful-death claim. *Ping*, 376 S.W.3d at 597–98. The Kentucky Supreme Court has twice reaffirmed *Ping*'s holding concerning the wrongful-death claim. *See Pete v. Anderson*, 413 S.W.3d 291, 300 (Ky. 2013) ("Based on the plain language of KRS 411.130 and our holding in *Ping*, we must reject Pete's contention that the wrongful death action belongs to the estate."); *see also Whisman*, 2015 WL 5634309, at *2 ("Our analysis in *Ping* was thorough, complete, correct, and unanimous. We reaffirmed it in *Pete*[,] and we have no reason to retreat from it now.").[3]

Under *Ping* and its progeny, Defendant is not required to arbitrate the wrongful-death claim. There are only two parties to the Agreement: the Center (now operated by Plaintiffs) and the decedent, Mr. Nichols. *See* Agreement, ¶ 1. Because the wrongful-death claim is independent in nature under *Ping*, Mr. Nichols, as the decedent, possessed "no cognizable legal rights in the wrongful death claim[] arising upon [his] demise" when he signed the Agreement.

---

[3]Kentucky is not alone in its holding that wrongful-death beneficiaries are not required to arbitrate their claims pursuant to the decedent's contract. *See, e.g.*, *Boler v. Sec. Health Care, LLC*, 336 P.3d 468, 477 (Okla. 2014) (holding that the wrongful-death beneficiaries are not required to arbitrate their claims pursuant to the decedent's contract); *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 663 (Pa. Super. Ct. 2013) (same); *Peters v. Columbus Steel Castings Co.*, 873 N.E.2d 1258, 1262 (Ohio 2007) (same).

In contrast, some states have held that wrongful-death beneficiaries are bound by a decedent's agreement to arbitrate because under their state laws, the wrongful-death claim is derivative of the decedent's claims. *See, e.g.*, *THI of New Mexico at Hobbs Center, LLC v. Spradlin*, 532 F. App'x 813, 817–18 (10th Cir. 2013) (holding that, under New Mexico law, wrongful death claim is derivative action, and so non-signatory, wrongful-death beneficiaries were bound by arbitration provision); *Laizure v. Avante at Leesburg, Inc.*, 109 So.3d 752, 762 (Fla. 2013) ("[T]he nature of a wrongful death cause of action in Florida is derivative in the context of determining whether a decedent's estate and heirs are bound by the decedent's agreement to arbitrate."). Similarly, other courts have held a wrongful-death beneficiary was still subject to a decedent's arbitration agreement notwithstanding the independent nature of the claim. *See, e.g.*, *Allen v. Pacheco*, 71 P.3d 375, 379 (en banc) (Colo. 2003) (holding that wrongful-death claim was required to be arbitrated under decedent's arbitration agreement even though claim was independent in nature); *see generally Ping*, 376 S.W.3d at 598 (collecting cases).

*Whisman*, 2015 WL 5634309, at * 2. Accordingly, the Agreement cannot be enforced against wrongful-death beneficiaries. *See id.*

That the Agreement purports to extend to wrongful-death claims makes no difference. Agreement, ¶ 4. Relying on this provision, Plaintiffs argue that wrongful-death beneficiaries are "necessarily intended third-party beneficiaries under the plain language of the Agreement," and therefore, whether the wrongful-death claims are independent or derivative under Kentucky law is "irrelevant." *See* Appellant Br. 19. Plaintiffs' argument fails as a matter of law. Under Kentucky law, Mr. Nichols simply had "no authority to make contracts disposing of, encumbering, settling, or otherwise affecting claims that belong to others." *Whisman*, 2015 WL 5634309, at *2. Therefore, the "rightful owners of the wrongful death claim . . . cannot be bound to the contractual arrangements purportedly made by [Mr. Nichols] with respect to those claims." *Id.*; *see also Ping*, 376 S.W.3d at 599 ("[W]e are not persuaded that a non-signatory who receives no substantive benefit under a contract may be bound to the contract's procedural provisions, including arbitration clauses, merely by being referred to in the contract."). Stated another way, Mr. Nichols' purported agreement to do something he was not authorized to do is not legally enforceable.

In sum, *Ping* resolves this case. Plaintiffs urge us to conclude that Ping is preempted by the FAA under *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011), which we next address.

## 2. *Ping* is not preempted by the FAA under *Concepcion*.

### a. Concepcion*: the test for preemption analysis.*

To determine whether the FAA preempts *Ping*, we apply the Supreme Court's most recent test in *Concepcion*. The Court described two situations in which a state rule is preempted by the FAA. *Concepcion*, 563 U.S. at 341. First, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* Second, when a "doctrine normally thought to be generally applicable . . . is alleged to have been applied in a fashion that disfavors arbitration," the court must determine whether the state law rule would have a "disproportionate impact" on arbitration

agreements. *Id.* at 341–42. This type of disproportionate impact "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343.

We now determine whether *Ping* is preempted by the FAA under *Concepcion*'s two-level inquiry.

### b. Ping *does not categorically prohibit arbitration of wrongful-death claims*.

*Ping* survives the first level of the *Concepcion* inquiry because it does not categorically prohibit arbitration of wrongful-death claims. Indeed, it only concludes that wrongful-death beneficiaries are not bound by agreements that are executed by the decedent. *Ping*, 376 S.W.3d at 599. Under *Ping*, nothing precludes those beneficiaries from entering into arbitration agreements. As *Whisman* explained, "wrongful death beneficiaries are free, as they always have been, to enter into arbitration agreements regarding their wrongful death claims." *Whisman*, 2015 WL 5634309, at *2 n.7.

Plaintiffs ignore this freedom of choice that wrongful-death beneficiaries have under *Ping*, and argue that *Ping* is similar to the state rule in *Marmet Health Care Center, Inc. v. Brown*, 132 S. Ct. 1201 (2012) (per curiam). Appellant Br. 13-14. Three negligence lawsuits were at issue in that case. *Marmet*, 132 S. Ct at 1202. In each one, a family member signed, on behalf of the decedent, an arbitration agreement with a nursing-home facility. *Id.* Under state public policy, however, an "arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence." *Id.* at 1203. In each case, the patient died and the family member sued the nursing home in state court. *Id.* The state supreme court concluded that the state public policy was not preempted and that the arbitration agreements were not enforceable. *Id.* The Supreme Court disagreed. *Id.* It held that the public policy ran afoul of the FAA as it was a "categorical" prohibition of "arbitration of a particular type of claim."[4] *Id.* at 1204.

---

[4]The Supreme Court remanded the case to the state court to determine whether the arbitration clauses under some of the agreements were "unenforceable under state common law principles that are not specific to arbitration and pre-empted by the FAA." *Marmet*, 132 S. Ct. at 1204.

The key distinction between this case and *Marmet* centers on the identity of the parties to the relevant agreements. In *Marmet*, each family member signed the arbitration agreement on behalf of the decedent, and was thus a party to it. *Id.* at 1202. As a result, the Supreme Court "enforce[d] the bargain of the parties to arbitrate." *Id.* at 1203. In contrast, no wrongful-death beneficiary signed the Agreement here—it was only Mr. Nichols himself. *See* Agreement, ¶ 1. Thus, Mr. Nichols' wrongful-death beneficiaries never struck the bargain that the family members in *Marmet* did. *Marmet*, then, does not compel us to conclude that *Ping* is preempted.

Accordingly, *Ping* survives the first level of inquiry under *Concepcion*. We next ascertain whether *Ping* is preempted under the second and "more complex" situation identified in *Concepcion*. *Concepcion*, 563 U.S. at 341.

### c. Ping *does not disfavor arbitration agreements*.

*Ping* does not, as Plaintiffs contend, have a "disproportionate impact" on arbitration agreements. *Id.* Critically, Plaintiffs have not cited any case showing a Kentucky court's enforcement of a contract against a wrongful-death beneficiary without the beneficiary being a party to it.[5] Indeed, the Kentucky Court of Appeals, in holding that *Ping* does not unfairly single out arbitration agreements in violation of the FAA, recently reasoned that the court could "safely assume that if any Kentucky case directly supported [defendant's] argument that Kentucky courts have previously enforced contracts against wrongful death beneficiaries without them

---

[5]When pressed to provide such a case at oral argument, Plaintiffs' counsel only cited *Estate of Peters v. U.S. Cycling Federation*, 779 F. Supp. 853 (E.D. Ky. 1991). In *Peters*, a decedent participated in a cycling race. *Peters*, 779 F. Supp. at 854. He died after sustaining injuries during the race. *Id.* His family sought to bring a wrongful-death claim against the organizers of the race, but the district court ruled that a decedent's execution of a release form prohibited his wrongful-death beneficiaries from pursuing the action. *Id.* at 855. So, the release was enforceable against the beneficiaries in *Peters*. *Id.* But the arbitration agreement was not enforceable against the beneficiaries in *Ping*. To Plaintiffs, this "typifies the type of disparate treatment of arbitration agreements forbidden by the FAA." Appellant Br. 16. *Peters* is not persuasive because it never considered whether the wrongful-death claim was independent of the decedent's claims under Kentucky law, and never explained why the release was binding on the wrongful-death beneficiaries. Equally important, appellate courts in Kentucky have expressly disavowed *Peters*, showing that it has by no means become a cornerstone of Kentucky jurisprudence. *See, e.g.*, *Kindred Nursing Centers Ltd. P'ship. v. Cox*, No. 2014-CA-000196-MR, 2015 WL 3525113, at *3 (Ky. Ct. App. June 5, 2015) (explaining that *Peters* was decided "without the benefit" of *Ping*); *Paducah Health Facilities LP v. Newberry*, No. 2013–CA–001980–MR, 2015 WL 6780406, at *5 (Ky. Ct. App. Nov. 6, 2015) ("Simply put, *Peters'* lone, passing reference provides little fodder to criticize *Ping,* let alone establish Paducah Health's theory that *Ping* represented a sea change in Kentucky law borne out of hostility to arbitration."); *see also* *K&T Enters., Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 177 (6th Cir. 1996) ("[W]e are compelled to consider intermediate appellate court decisions as evidence of what a state's highest court would do when faced with particular legal questions.").

being parties to the contract at issue, [defendant] would have cited it." *Cox*, 2015 WL 3525113, at \*3. Wrongful-death beneficiaries are thus no more or less bound by a decedent's agreement to arbitrate than they are by a decedent's waiver of certain claims, selection of a forum to litigate disputes, or selection of the law governing an agreement. To illustrate, suppose that a decedent and the long-term facility enter into an agreement in which the parties select a Kentucky state court as the forum to litigate the wrongful-death claim. Under *Ping*, the wrongful-death beneficiary is not bound by this forum-selection clause because the decedent never had an interest in the claim itself. And because the beneficiary is not bound by the clause, the beneficiary could very well elect to arbitrate the wrongful-death claim instead—so long as the long-term facility agrees. *Ping* is thus indifferent to arbitration.

*Concepcion* does not compel a different conclusion. In that case, an arbitration clause required customers to arbitrate disputes in an "individual capacity, and not as a plaintiff or class member in any purported class or representative proceeding." *Concepcion*, 563 U.S. at 3336. But under a California Supreme Court case, such "class-action waivers" in adhesion contracts were unconscionable. *Id.* at 338. Applying this California rule, the district court concluded that the clause was invalid. *Id.* The Supreme Court disagreed, holding that California's rule was preempted. *Id.* at 352. It relied on three reasons to reach that conclusion—all related to how the arbitration process would be burdened as a result of the California rule's application. *Id.* at 348. First, the requirement of class arbitration "sacrifices the principal advantage of arbitration—its informality—and makes the process slower, more costly, and more likely to generate procedural morass than final judgment." *Id.* Second, class arbitration itself requires procedural formality; the American Arbitration Association provides rules governing class arbitration that "mimic" the Federal Rules of Civil Procedure for class litigation. *Id.* at 349. Third, class arbitration "greatly increases risks to defendants[;]" if forced to engage in class arbitration, defendants will be "faced with . . . a small chance of a devastating loss" and will be "pressured into settling questionable claims." *Id.* at 350. In essence, the California rule in *Concepcion* was preempted because it threatened to make arbitration more cumbersome, more costly, and more procedurally complicated. *Ping*, by contrast, does none of that. It merely interpreted a state statute, KRS 411.130, to determine who held an interest in a claim. There is no reason to think that *Ping* burdens arbitration in the same way that the California rule did in *Concepcion*.

Plaintiffs' arguments that a disproportionate impact exists are not compelling. First, Plaintiffs argue that *Ping* "effectively nullifies" arbitration in the wrongful-death context. Appellant Br. 22. In support of this argument, Plaintiffs argue that "[i]t is impossible to identify all possible wrongful-death beneficiaries at the time a pre-dispute arbitration agreement is signed and the decedent is alive" because, as explained during oral argument, the class of purported wrongful-death beneficiaries is ever-evolving until the time the decedent dies. *Id.*; *see also Golden Gate Nat'l. Senior Care, LLC v. Addington*, No. 14-CV-327-JMH, 2015 WL 1526135, at *8 (E.D. Ky. Apr. 3, 2015). That might be the case. But Plaintiffs have not shown how *Ping* disfavors arbitration because those wrongful-death beneficiaries that exist at the time of a decedent's death are still free to arbitrate their claims—that they could not be identified at the time the decedent signs the agreement makes no difference. *See Whisman*, 2015 WL 5634309, at *2 n.7 (criticizing *Golden Gate*).

Plaintiffs next contend that a denial of arbitration would split causes of action, which further "interferes with fundamental attributes of arbitration."[6] Appellant Br. 23-24. Here, the district court compelled arbitration of all claims except for wrongful death, and stayed the proceedings until arbitration was complete. Plaintiffs argue that a consequence of this partial enforcement of the arbitration provision would result in "*res judicata* complications, dual track discovery, waste and duplication." *Id.* It is improper to rely on res judicata considerations as a basis to force Defendant to arbitrate the wrongful-death claim. Plaintiffs' position would force the wrongful-death beneficiaries to arbitrate a claim when they never agreed to do so, or to surrender their claim altogether. *W.J. O'Neil Co. v. Shepley, Bulfinch, Richardson & Abbott, Inc.*, 765 F.3d 625, 631 (6th Cir. 2014). The law does not impose this Hobson's choice on the beneficiaries. Requiring a party to arbitrate a claim when it never agreed to do so would be "apply[ing] res judicata in a way that subverts basic contract principles." *Id.*; *see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a[n] [arbitration] contract cannot bind a nonparty."); *Volt Info. Scis, Inc. v. Bd. of Trs. of Leland Stanford Junior*

---

[6]Plaintiffs also argue that splitting up causes of action is prohibited as a matter of Kentucky law. Appellant Br. 23-24. (citing *Coles' Adm'x v. Illinois Cent. R.R. Co.*, 87 S.W. 1082, 1083 (Ky. 1905); *Honaker v. Cecil*, 1 S.W. 392 (Ky. 1886); *Louisville Gas Co. v. Kentucky Heating Co.*, 134 S.W. 205 (Ky. 1911); *Wood v. Sharp's Adm'r*, 166 S.W. 787 (Ky. 1914)). None of these cases, however, goes as far as Plaintiffs claim, and Plaintiffs cite no other legal authority in support of the proposition.

*Univ.*, 489 U.S. 468, 479 (1989) ("Arbitration under the [FAA] is a matter of consent, not coercion . . . ."). With respect to Plaintiffs' concerns about "dual track discovery" and duplication, the Supreme Court has acknowledged that splitting causes of action is inevitable in certain cases. *See Moses*, 460 U.S. at 20 (acknowledging the possibility of the plaintiff having to resolve its disputes in two forums—one in state court and one in arbitration—where one of the parties to the underlying dispute was not a party to the arbitration agreement). Plaintiffs' preemption arguments are thus not persuasive.

\*\*\*

At its heart, this case is not about preemption; it is about consent. In *Concepcion*, the Supreme Court made the signatories live up to the terms of the agreement, which included a class-action waiver provision. The Supreme Court struck down the state rule that the signatories tried to use as an escape hatch in an effort to avoid bilateral arbitration. *Concepcion*, 563 U.S. at 352. But that is not what we have here. In this case, federal law does not force arbitration upon a party that never agreed to arbitrate in the first place under the guise of preemption principles.[7]

### 3. Plaintiffs' other reasons to disregard *Ping* are unavailing.

Plaintiffs provide several other reasons as to why we should not follow *Ping*. As shown below, none of those reasons is persuasive.

#### a. First argument: Ping*'s reasoning has no binding effect.*

Plaintiffs devote much space arguing that *Ping*'s discussion of wrongful-death beneficiaries constitutes obiter dictum,[8] and thus is not binding on this Court. Appellant Br. 8, n.2. Specifically, Plaintiffs argue that *Ping* held that the arbitration agreement was not

---

[7]Recently, several Kentucky appellate courts have concluded that *Ping* is not preempted by the FAA. *See, e.g.*, *Kindred Healthcare, Inc. v. Goodman*, No. 2014-CA-000589-MR, 2015 WL 2330480, at \*4 (Ky. Ct. App. May 15, 2015) (holding that *Ping* is not preempted by *Concepcion* or *Marmet*); *Newberry*, 2015 WL 6780406, at \*4 ("*Ping* does not categorically invalidate arbitration agreements, even for wrongful death claims; nor does it apply general rules of contract law in a way specifically designed to frustrate arbitration agreements."); *Cox*, 2015 WL 3525113, at \*3 (concluding that *Ping* is not preempted by the FAA).

[8]The definition of "obiter dictum" is as follows: "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)." Black's Law Dictionary (10th ed. 2014). The terms "obiter dictum" and "dicta" are used interchangeably. *Id.*

enforceable because the nursing home-resident's attorney lacked authority to execute the agreement. *Id.* Therefore, Plaintiffs contend, any discussion on the arbitrability of wrongful-death claims constitutes dicta. *Id.* We are not persuaded by Plaintiff's argument for the following reasons.

First, *Ping* itself disposes of Plaintiffs' argument. The Kentucky Supreme Court determined that the wrongful-death issue was of "sufficient importance both to this case and to a full statement of the law in this area," and that its analysis was "an important, *independently* decisive ground for the trial court's decision" to deny arbitration. *Ping*, 376 S.W.3d at 597 n.6 (emphasis added). For that reason, we read *Ping*'s discussion on arbitrability as an alternative holding. *See Woods v. Interstate Realty Co.*, 337 U.S. 535, 537 (1949) ("[W]here a decision rests on two or more grounds, none can be relegated to the category of obiter dictum."); *see also Pratt v. Ventas, Inc.*, 365 F.3d 514, 521 (6th Cir. 2004) ("We read the bankruptcy court's discussion of Plaintiffs' jurisdictional issue not as dicta, however, but as an alternative holding.").

Second, even if *Ping*'s reasoning qualified as dicta, we would still follow a state supreme court's pronouncement on matters of state law. *See United Servs. Auto. Ass'n v. Barger*, 910 F.2d 321, 325 (6th Cir. 1990) ("It is clear . . . that dicta is a valuable source for a federal court attempting to determine state law."); *see also Kraemer v. Luttrell*, 189 F. App'x 361, 365 (6th Cir. 2006) ("[W]e are authorized to consider the dicta of [a] [state] [s]upreme [c]ourt in determining how it would decide this matter.") (citing *Pack v. Damon Corp.*, 434 F.3d 810, 818 (6th Cir. 2006)). And given that the Kentucky Supreme Court has twice blessed *Ping*'s reasoning in the past three years, we have no reason to think that it will change its mind any time soon. *See Whisman*, 2015 WL 5634309, at \*2 n.7; *Pete*, 413 S.W.3d at 300.

> b. *Second argument: the* Ping *court usurped the state legislature's function in violation of the separation-of-powers clause of the Kentucky Constitution.*

Plaintiffs contend that the Supreme Court of Kentucky unconstitutionally defined a statutory cause of action, and so performed a function that exclusively belonged to the Kentucky Legislature. *See* Appellant Br. 28 (citing *Giuliani v. Guiler*, 951 S.W.2d 318, 325–26 (Ky. 1997) (Cooper, J. dissenting)). This purportedly raises separation-of-powers concerns as embodied in

the Kentucky Constitution. *See* Kentucky Const. § 28. But reliance on the dissent in *Giuliani*—the only case that Plaintiffs cite in support of their argument—is unavailing. The issue in that case was whether Kentucky recognized a common-law right of a minor for the loss of parental consortium. *Giuliani*, 951 S.W.2d at 318. The court concluded that a right existed, and emphasized that such a claim "arises from a recognition of the common law as distinguished from statutory law." *Id.* at 323. Unlike the court in *Guiliani*, *Ping* did not create a new cause of action out of whole cloth. Thus, to the extent that the *Guiliani* dissent's concerns are well-founded, they do not apply here because no doubt exists that a wrongful-death action exists as a matter of Kentucky constitutional and statutory law. *See* Kentucky Const. § 241; KRS 411.130.

### c. Third argument: Ping *was decided after the Agreement was executed.*

Plaintiffs argue that *Ping* was rendered after the Agreement was executed. Appellant Br. 29. Because contracts "implicitly include the laws in existence at the time and place the parties made the contract," Plaintiffs contend that *Ping* does not apply here. *Id.* (citing *Corbon Deposit Bank v. King*, 384 S.W.2d 302, 304 (Ky. 1964)). Plaintiffs' argument fails.

To begin, Kentucky's highest court acknowledged the independence of the wrongful-death statute in 1967 at the latest. *See Moore*, 420 S.W.2d at 672 ("It has been pointed out that the wrongful death action is not derivative. . . . The cause is distinct from any that the deceased may have had if he had survived."). In fact, *Ping* relied on *Moore* to conclude that the wrongful-death claim was independent in nature. *Ping*, 376 S.W.3d at 599; *see also Vaughn's Adm'r v. Louisville & Nashville R.R. Co.*, 179 S.W.2d 441, 445 (Ky. 1944) ("This action is brought under KRS 411.130, which gives a cause of action to a personal representative for the sole benefit of named beneficiaries. The recovery in an action for wrongful death is not for the benefit of the estate but for the next of kin, here the decedent's father and mother."). Plainly put, *Ping* was not a departure from long-standing Kentucky law, but an affirmation of it.[9]

---

[9]The Kentucky Court of Appeals at the time *Moore* was rendered was the highest appellate court in Kentucky, and was the predecessor court to the Kentucky Supreme Court. Decisions of this predecessor court are binding. *See* SCR 1.030(8)(a) ("The Court of Appeals is bound by and shall follow applicable precedents established in the opinions of the Supreme Court *and its predecessor court.*") (emphasis added); *see also Matlock v. Commonwealth*, 344 S.W.3d 138, 139 (Ky. Ct. App. 2011) (concluding that Kentucky Court of Appeals case decided in 1974 was binding on court under SCR 1.030(8)(a)).

Nor can Plaintiffs argue that the state of the law, at the time *Ping* was rendered, was reflected in cases decided by Kentucky's highest court in *Louisville Railway Co. v. Raymond's Adm'r*, 123 S.W. 281 (Ky. 1909) and *Perry's Adm'r v. Louisville & Nashville Railroad Co.*, 251 S.W. 202 (Ky. 1923). Plaintiffs rely on those cases to argue that the wrongful-death claim is derivative of the decedent's claims, and not independent of them as *Ping* holds. *See Louisville Ry.*, 123 S.W. at 283 ("[M]anifestly the [wrongful-death] statute . . . was not [intended] to create a right of action in the beneficiaries, but only to protect the recovery for benefit from the claim of others."); *Perry's*, 251 S.W. at 204 ("[An] . . . administrator . . . has no greater or broader powers with respect to [decedent's] rights than [decedent] ha[s] . . . and cannot therefore maintain an action to recover for the death of his intestate. . . .").[10] To the extent that these state supreme court decisions are inconsistent, *Moore*, the last decision in which Kentucky's highest court addressed the issue, is controlling. *See Meredith v. City of Winter Haven*, 320 U.S. 228, 234 (1943) (concluding that, notwithstanding inconsistent decisions of state supreme court, the latest decision of the state supreme court "must be taken as controlling here unless it can be said with some assurance that the [state] [s]upreme [c]ourt will not follow [it] in the future."); *see also Linde Air Prods. Co. v. Cameron*, 82 F.2d 22, 24 (4th Cir. 1936) (concluding that "last pronouncement of the highest [state appellate court] as to the construction of a state statute," notwithstanding prior inconsistent decisions, is "binding."). Further assurance that application of *Ping* to the Agreement here is appropriate is that *Whisman* retroactively applied *Ping* to the three arbitration agreements at issue in that case, which were executed well before *Ping* was rendered. *Whisman*, 2015 WL 5634309, at *3, *5, and *6.

All in all, Plaintiffs cannot escape the reaches of *Ping*, and their efforts to do so must fail.

## IV.    CONCLUSION

For the reasons set forth above, this Court **AFFIRMS** the decision of the district court.

---

**10**Because of *Louisville* and *Perry's*, Plaintiffs also argue that *Ping* represents a departure from longstanding Kentucky law. Appellant Br. 26-27. But we are not in a position to determine whether a state supreme court incorrectly ruled on a matter of state law. *See, e.g., DirecTV, Inc. v. Imburgia*, 136 S. Ct. 463, 468 (2015) (recognizing that state courts are "ultimate authority" on state law).