**PREFERRED CARE PARTNERS MANAGEMENT GROUP, L.P.; Preferred Care of Delaware, Inc. d/b/a Preferred Care, Inc.; Stanton Health Facilities, LP d/b/a Stanton Nursing & Rehabilitation Center; and Thomas B. Davis, in his capacity as Administrator of Stanton Nursing & Rehabilitation Center, Appellants**

v.

**Taffy ALEXANDER, as Administratrix of the Estate of John D. Clemons, Sr., Deceased, Appellee**

NO. 2015-CA-000563-MR

Court of Appeals of Kentucky.

SEPTEMBER 22, 2017; 10:00 A.M.

BRIEFS FOR APPELLANTS: Donald L. Miller, II, J. Peter Cassidy, III, Kristin M. Lomond, Louisville, Kentucky.

BRIEF FOR APPELLEE: Tyler Koch Forsythe, Robert E. Salyer, Lexington, Kentucky.

BEFORE: KRAMER, CHIEF JUDGE; TAYLOR AND THOMPSON, JUDGES.

## OPINION

TAYLOR, JUDGE:

Preferred Care Partners Management Group, L.P., Preferred Care of Delaware, Inc. d/b/a Preferred Care, Inc., Stanton Health Facilities, LP, d/b/a Stanton Nursing & Rehabilitation Center, and Thomas B. Davis, in his capacity as Administrator of Stanton Nursing & Rehabilitation Center (collectively referred to as appellants or Stanton Nursing Center) bring this appeal from an Order entered March 24,

2015, by the Powell Circuit Court denying in part their motion to compel arbitration as concerns a wrongful death claim. The sole issue in this appeal looks to whether a wrongful death claim can be litigated by the Estate of John D. Clemons, Sr. and Taffy Alexander Administratrix, on behalf of beneficiaries of the decedent, against a nursing home where the decedent entered into a valid arbitration agreement during his residency. For the reasons stated, we affirm.

## BACKGROUND

The circuit court, in denying appellant's motion to compel arbitration, followed the Kentucky Supreme Court's holding in *Ping v. Beverly Enterprises, Inc.*, 376 S.W.3d 581 (Ky. 2012). In *Ping*, the Kentucky Supreme Court squarely confronted whether a decedent could, either directly or through an attorney-in-fact, enter into an arbitration contract that would bind the decedent's beneficiaries in asserting wrongful death claims upon the decedent's death. *Id.* The Court held:

> Finally, the wrongful death claimants would not be bound by the decedent's arbitration agreement, even if one existed, because their statutorily distinct claim does not derive from any claim on behalf of the decedent, and they therefore do not succeed to the decedent's dispute resolution agreements. . . .

*Id.* at 600.

In 2015, in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), the Supreme Court confirmed its holding in *Ping*, 376 S.W.3d 581, with an even more thorough analysis on the issue as follows:

> Under Kentucky law, a wrongful death claim is a distinct interest in a property right that belongs *only* to the statutori-

ly-designated beneficiaries. Decedents, having no cognizable legal rights in the wrongful death claims arising upon their demise, have no authority to make contracts disposing of, encumbering, settling, or otherwise affecting claims that belong to others. The rightful owners of a wrongful death claim, the beneficiaries identified in KRS 411.130(2), cannot be bound to the contractual arrangements purportedly made by the decedent with respect to those claims. A decedent has no more authority to bind the wrongful death beneficiaries to an arbitration agreement than he has to bind them to a settlement agreement fixing or limiting the damages to be recovered from the wrongful death action, limiting the persons against whom a claim could be pursued, or an agreement on how and to whom to allocate the damages recovered in a wrongful death claim. Our analysis in *Ping* was thorough, complete, correct, and unanimous. . . . and we have no reason to retreat from it now.

*Id.* at 314 (citations omitted).[1]

In *Extendicare Homes, Inc.*, the Kentucky Supreme Court actually heard three cases involving similar arbitration issues in regard to nursing homes. In addition to *Extendicare Homes, Inc. v. Whisman* (2013-SC-000426-I), the companion cases were *Kindred Nursing Centers v. Clark* (2013-SC-000430-I) and *Kindred Nursing Centers v. Wellner* (2013-SC-000431-I). Kindred Nursing Centers filed a writ of certiorari with the United States Supreme Court in both of its cases, which was granted on October 28, 2016. However, Extendicare did not seek certiorari and that part of the Kentucky Supreme Court's

---

1. The Kentucky Supreme Court's decision in *Extendicare Homes, Inc. v. Whisman*, 478 S.W.3d 306 (Ky. 2015), became final on February 18, 2016, after the parties had filed their briefs in this case.

opinion (2013-SC-000426-I) became final on February 18, 2016.

Notwithstanding the finality of Extendicare's part of the Kentucky decision, upon the United States Supreme Court's granting of certiorari in the *Kindred* companion cases, this Court entered an order holding this appeal in abeyance on December 5, 2016. We took this action out of an abundance of caution and judicial economy, given that all three cases before the Kentucky Supreme Court had similar arbitration issues. By Opinion rendered by the United States Supreme Court on May 15, 2017, in *Kindred Nursing Centers Ltd. Partnership v. Clark*, —— U.S. ——, 137 S.Ct. 1421, 197 L.Ed.2d 806 (2017), the United States Supreme Court reversed the *Clark* decision and vacated and remanded the *Wellner* case to the Kentucky Supreme Court (we refer to these cases collectively as the *Kindred* cases or decisions). Subsequently, we took this case out of abeyance by order entered July 7, 2017, and now address this appeal on the merits.

## ANALYSIS

We note at the outset of our review, that a power of attorney is not involved in this case as compared to the *Kindred* cases addressed by the United States Supreme Court. In this case, John D. Clemons, Sr., executed the Stanton Nursing Center's Alternative Dispute Resolution Agreement in 2012. The agreement contained valid arbitration provisions. Mr. Clemons had been a resident of the Stanton Nursing Center since 2007 and died on January 30, 2013. Any claims asserted for negligence, medical negligence, corporate negligence, and violation of a nursing home resident's statutory rights were subject to the arbitration agreement, as noted by the circuit court, which are not an issue on appeal in this case.

■ As noted, the issue on appeal looks to whether wrongful death claims asserted by the Estate of John D. Clemons, Sr., on behalf of his beneficiaries are subject to the valid arbitration agreement. As also noted, *Ping v. Beverly Enterprises*, 376 S.W.3d 581, is the controlling authority on this issue and thus our review has focused upon whether the recent *Kindred* decisions rendered by the United States Supreme Court has overturned this precedent. We conclude it has not for the reasons that follow.

This Court has thoroughly reviewed the *Kindred* decisions and we do not believe it overrules *Ping* as concerns the derivative claims asserted by wrongful death beneficiaries under Kentucky Revised Statutes (KRS) 411.130. The *Kindred* decisions reference authorities relied upon by appellants to support their argument that wrongful death beneficiaries are subject to nursing home arbitration agreements: namely, *Marmet Health Care Center, Inc. v. Brown*, 565 U.S. 530, 132 S.Ct. 1201, 182 L.Ed. 2d 42 (2012) and *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S.Ct. 1740, 179 L.Ed.2d 742 (2011). Appellants argue the Federal Arbitration Act (FAA) and these cases have preempted *Ping* and other Kentucky authority on this issue. We believe these cases as well as the other federal authority relied upon by appellants in their brief are clearly distinguishable and not applicable to the facts of this case, as supported by *Ping* and *Extendicare*.

■ Contrary to appellants' argument, we do not believe *Ping* has been preempted by the FAA as interpreted in the *Concepcion* decision. We find nothing in the *Kindred* decisions that would lead us to believe otherwise, especially since the decision in *Extendicare v. Whisman* was not addressed by the United States Supreme Court. And, prior to the *Kindred* decisions, federal courts in Kentucky like-

wise had concluded that *Ping* and its progeny were not preempted by the FAA. The Sixth Circuit Court of Appeals recently addressed this very issue in *Richmond Health Facilities v. Nichols*, 811 F.3d 192 (6th Cir. 2016), holding that beneficiaries who were not parties to a nursing home arbitration agreement were not subject to its provisions. The Sixth Circuit thoroughly analyzed the preemption issue which we incorporate as follows:

2. *Ping* is not preempted by the FAA under *Concepcion.*

a. *Concepcion: the test for preemption analysis.*

To determine whether the FAA preempts *Ping*, we apply the Supreme Court's most recent test in *Concepcion*. The Court described two situations in which a state rule is preempted by the FAA. *Concepcion*, 563 U.S. at 341, 131 S.Ct. 1740. First, "[w]hen state law prohibits outright the arbitration of a particular type of claim, the analysis is straightforward: The conflicting rule is displaced by the FAA." *Id.* Second, when a "doctrine normally thought to be generally applicable ... is alleged to have been applied in a fashion that disfavors arbitration," the court must determine whether the state law rule would have a "disproportionate impact" on arbitration agreements. *Id.* at 341–42, 131 S.Ct. 1740. This type of disproportionate impact "stand[s] as an obstacle to the accomplishment of the FAA's objectives." *Id.* at 343, 131 S.Ct. 1740.

We now determine whether *Ping* is preempted by the FAA under *Concepcion*'s two-level inquiry.

b. *Ping does not categorically prohibit arbitration of wrongful-death claims.*

*Ping* survives the first level of the *Concepcion* inquiry because it does not categorically prohibit arbitration of wrongful-death claims. Indeed, it only concludes that wrongful-death beneficiaries are not bound by agreements that are executed by the decedent. *Ping,* 376 S.W.3d at 599. Under *Ping*, nothing precludes those beneficiaries from entering into arbitration agreements. As *Whisman* explained, "wrongful death beneficiaries are free, as they always have been, to enter into arbitration agreements regarding their wrongful death claims." *Whisman,* 478 S.W.3d at 314 n. 7, 2015 WL 5634309, at *2 n. 7.

Plaintiffs ignore this freedom of choice that wrongful-death beneficiaries have under *Ping*, and argue that *Ping* is similar to the state rule in *Marmet Health Care Center, Inc. v. Brown,* 565 U.S. 530, 132 S.Ct. 1201, 182 L.Ed. 2d 42 (2012) (per curiam). Appellant Br. 13–14. Three negligence lawsuits were at issue in that case. *Marmet,* 132 S.Ct. at 1202. In each one, a family member signed, on behalf of the decedent, an arbitration agreement with a nursing-home facility. *Id.* Under state public policy, however, an "arbitration clause in a nursing home admission agreement adopted prior to an occurrence of negligence that results in a personal injury or wrongful death, shall not be enforced to compel arbitration of a dispute concerning the negligence." *Id.* at 1203. In each case, the patient died and the family member sued the nursing home in state court. *Id.* The state supreme court concluded that the state public policy was not preempted and that the arbitration agreements were not enforceable. *Id.* The Supreme Court disagreed. *Id.* It held that the public policy ran afoul of the FAA as it was a "categorical" prohibition of "arbitration of a particular type of claim." *Id.* at 1204.

The key distinction between this case and *Marmet* centers on the identity of

the parties to the relevant agreements. In *Marmet*, each family member signed the arbitration agreement on behalf of the decedent, and was thus a party to it. *Id.* at 1202. As a result, the Supreme Court "enforce[d] the bargain of the parties to arbitrate." *Id.* at 1203. In contrast, no wrongful-death beneficiary signed the Agreement here—it was only Mr. Nichols himself. *See* Agreement, ¶ 1. Thus, Mr. Nichols' wrongful-death beneficiaries never struck the bargain that the family members in *Marmet* did. *Marmet*, then, does not compel us to conclude that *Ping* is preempted. Accordingly, *Ping* survives the first level of inquiry under *Concepcion*. We next ascertain whether *Ping* is preempted under the second and "more complex" situation identified in *Concepcion*. *Concepcion*, 563 U.S. at 341, 131 S.Ct. 1740.

c. *Ping does not disfavor arbitration agreements.*

*Ping* does not, as Plaintiffs contend, have a "disproportionate impact" on arbitration agreements. *Id.* Critically, Plaintiffs have not cited any case showing a Kentucky court's enforcement of a contract against a wrongful-death beneficiary without the beneficiary being a party to it. Indeed, the Kentucky Court of Appeals, in holding that *Ping* does not unfairly single out arbitration agreements in violation of the FAA, recently reasoned that the court could "safely assume that if any Kentucky case directly supported [defendant's] argument that Kentucky courts have previously enforced contracts against wrongful death beneficiaries without them being parties to the contract at issue, [defendant] would have cited it." *Cox*, 486

S.W.3d at 892 (2015). Wrongful-death beneficiaries are thus no more or less bound by a decedent's agreement to arbitrate than they are by a decedent's waiver of certain claims, selection of a forum to litigate disputes, or selection of the law governing an agreement. To illustrate, suppose that a decedent and the long-term facility enter into an agreement in which the parties select a Kentucky state court as the forum to litigate the wrongful-death claim. Under *Ping*, the wrongful-death beneficiary is not bound by this forum-selection clause because the decedent never had an interest in the claim itself. And because the beneficiary is not bound by the clause, the beneficiary could very well elect to arbitrate the wrongful-death claim instead—so long as the long-term facility agrees. *Ping* is thus indifferent to arbitration.

*Richmond Health Facilities* at 197-99.

Again, we find nothing in the *Kindred* decisions that would overturn the analysis set out by the Sixth Circuit in the *Nichols* decision above as concerns the viability of *Ping*, which correctly details the current law in Kentucky that wrongful death beneficiaries are not bound by agreements executed by a decedent.[2] This position is further buttressed by the fact that KRS 411.130 preceded the enactment of both the FAA and Kentucky Uniform Arbitration Act and thus is not antiarbitration legislation. The genesis of KRS 411.130 can be traced to Section 6 of the Kentucky Statutes of 1903, which allowed a cause of action to accrue upon the wrongful death of a person. This statute was interpreted early on by Kentucky courts to mean that a cause of action for wrongful death ac-

---

**2.** We would also note that on June 28, 2017, after the Kindred decisions were rendered, a federal district court in eastern Kentucky followed *Richmond Health Facilities v. Nichols*, in a similar wrongful death case. *GGNSC Frankfort, LLC v. Moore*, 2017 WL 2805147 (E.D. Ky. 2017).

crued on the date of a decedent's death, and not the date of an injury. *Louisville & N.R. Co. v. Simrall's Administrator*, 127 Ky. 55, 104 S.W. 1011 (1907). Thus, only a personal representative on behalf of a decedent's Estate could pursue the wrongful death claim under the statute. *Id.*

We further emphasize that the FAA was enacted in 1925 and the KUAA in 1984. Thus, KRS 411.130 was enacted without regard to arbitration and cannot be construed to be discriminating against the arbitration of a particular type of claim as described in *Concepcion*, 563 U.S. 333, 131 S.Ct. 1740. As Judge VanMeter plainly stated in *Kindred Nursing Centers Ltd. Partnership v. Cox*, 486 S.W.3d 892, 893 (Ky. App. 2015), "[u]nder Kentucky precedent, wrongful death claims are not subject to arbitration."

Had all of the legal beneficiaries of John D. Clemons, Sr., executed the arbitration agreement at issue in this case at the time of his admission or during his residency at the nursing home, then the outcome of this case could be different. However, until the Kentucky Supreme Court directs otherwise, we are duty bound to follow existing Kentucky precedent pursuant to Rules of the Supreme Court 1:030(8), and therefore affirm the Powell Circuit Court's Order denying appellants' motion to arbitrate the underlying wrongful death claim in this case. Any remaining arguments raised by appellants are moot or without merit.

For the foregoing reasons, the Order of the Powell Circuit Court is affirmed.

ALL CONCUR.